IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAVONIA GADDY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 09 C 5338 |
| ) | |
| ARTHUR S. WULF, ) | Judge Virginia M. Kendall |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lavonia Gaddy ("Gaddy") sued Defendant Arthur S. Wulf ("Wulf") alleging he violated the Fair Debt Collection Practices Act (the "FDCPA" or the "Act"), 15 U.S.C § 1692 *et seq* (Count I), committed fraud (Count II), assault (Count III), and intentional infliction of emotional distress ("IIED") (Count IV), and violated the Illinois Forcible Entry and Detainer Act (the "Illinois Act") (Count V) when he attempted to collect rent from Gaddy, his tenant. Wulf moves to dismiss Gaddy's Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) claiming he is not a "debt collector" under the FDCPA. For the following reasons, the Court dismisses Count I for failure to state a claim because Wulf is not a "debt collector" as defined by the FDCPA.

**BACKGROUND**

The following facts are taken from Gaddy's Complaint and are assumed to be true for purposes of this Motion to Dismiss. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). Sometime before January 2009, Gaddy entered into an agreement with Wulf to rent a single-family residence that he owned. (R. 1, Compl. ¶ 4.) Gaddy defaulted on her rent, filed for Chapter 13 Bankruptcy, but remained in the home. *(Id.* ¶¶ 7-8.) Several months after Gaddy defaulted on her

rent, Wulf began contacting her trying to collect payment. On July 1, 2009, Wulf called Gaddy at home and told her that if she did not move out of the house by July 4, 2009 he would evict her. (*Id*. ¶¶ 9-11.) Wulf called Gaddy again on July 9, 2009 and demanded that she move out of the house and pay him $15,000. (*Id*. ¶ 13.) During the same phone call, Wulf threatened to call or visit Gaddy's employer to embarrass her and cause her to lose her job, to bring the matter to court for "an unreasonable and extended time," and to ruin her credit. (*Id*.) After the July 9th call, Gaddy called the police because Wulf's threats made her fear for her safety and the safety of her children. (*Id*. ¶ 14.) On July 12, 2009, Wulf went to Gaddy's home again and demanded that Gaddy pay him $15,000. (*Id*. ¶¶ 15-16.) He also demanded that she sign a handwritten wage garnishment letter and a promissory note which Gaddy refused to do. (*Id*. ¶ 16.) During this incident, Wulf verbally abused Gaddy and her daughters, refusing to leave until Gaddy threatened to call the police. (*Id*. ¶ 17.)

Meanwhile, Gaddy had retained a bankruptcy attorney, a fact she made clear to Wulf during his July 12 visit. (*Id*. ¶ 18.) On July 15, 2009, Gaddy's attorney moved for an extension of time to allow Wulf to file a claim for past due rent with the bankruptcy court, which was granted. (*Id*. ¶¶ 19-20.) On July 18, 2009, Wulf again went to his property where Gaddy remained in spite of not paying him rent. Wulf entered the residence without her permission and verbally abused, assaulted, and threatened Gaddy's daughters. (*Id*. ¶¶ 21-23.) Fearing for their safety, Gaddy's daughters called the police who came to the home and instructed Wulf to leave. (*Id*. ¶¶ 23, 25-26.)

On August 17, 2009, Gaddy's bankruptcy attorney faxed Wulf a copy of the bankruptcy court's order extending the time Wulf had to file a claim for past due rent. (*Id*. ¶ 27.) After receiving the bankruptcy order, Wulf called Gaddy at work and then mailed a letter written on his law office letterhead to Gaddy at work. (*Id*. ¶¶ 28-29.) In the letter, Wulf wrote that he had not

received rent from Gaddy for the last twelve months and that he would accept payments of $100 each week from her salary. (*Id*. ¶ 30.) If she did not comply, Wulf wrote, he would "take other legal action" against her and her family. (*Id*.) Wulf also accused Gaddy of fraud. (*Id*.) That same day, Wulf mailed a letter to Gaddy's employer. (*Id*. ¶ 31.) This letter was also on his law office letterhead, but in this letter, Wulf addressed Gaddy's employer as if he was Gaddy's landlord's lawyer. (*Id*. ¶ 32.) In relevant part, the letter stated the following:

> I believe you have an employee named Lavonia Gaddy. She was formerly a tenant of a client of mine, and was behind in her rent for many months. She did not leave any forwarding information, so I have no way to get information to her. If she still works at your hotel, please give her the enclosed sealed letter. If she does not work at your hotel, let me know.
>
> Until recently she was paying on her rent with a payroll deduction from Renaissance. She told me she would continue to make those payments at $100 a week, until her obligation was paid off. You have all of the applicable information in your system. Please forward this letter to your accounting department, and find out why those payments have ceased. Ms. Gaddy reaffirmed this just last week, so it should be in operation now.

(*Id*. ¶ 32.) Gaddy had not agreed to a wage garnishment arrangement. (*Id*. ¶ 36.)

On August 21, 2009, Wulf sent another letter on his law office letterhead, this time to Gaddy's bankruptcy attorney. (*Id*. ¶ 37.) In this letter, Wulf denied "communicat[ing] with anyone once [he] was informed that Ms. Gaddy had filed [for bankruptcy under] Chapter 13," and he stated that Gaddy had "reaffirmed her obligation to [him] subsequent to filing her [bankruptcy] Petition." (*Id*. ¶ 38.) Since August 25, 2009, Wulf has called Gaddy's place of employment a number of times despite being told by both Gaddy and her employer that her employer prohibits such communications. (*Id*. ¶¶ 41-42.) During Wulf's calls to Gaddy's place of employment, Wulf "has been abusive, harassing, has yelled," and has threatened Gaddy and others. (*Id*. ¶ 44.)

3

Gaddy sued Wulf, alleging multiple violations of the FDCPA and state law claims for fraud, assault, IIED, and violations of the Illinois Act. Wulf now moves to dismiss Gaddy's Complaint pursuant to Rule 12(b)(1), arguing that because he is not a "debt collector" under the FDCPA, this Court does not have subject matter jurisdiction over Gaddy's claim. Wulf also contends that he should receive attorneys fees because Gaddy's FDCPA claim was not filed in good faith.

## DISCUSSION

I. **Jurisdictional Issue**

As an initial matter, the Court considers whether Wulf's Motion to Dismiss for lack of subject matter jurisdiction is properly labeled. Although such a motion may not be the appropriate vehicle for attacking the Complaint, the label is less important than the attack itself, which at its heart is questioning the applicability of the FDCPA. As such, it is appropriate to analyze Wulf's Motion pursuant to the 12(b)(6) standard. *See Health Cost Controls v. Skinner*, 44 F.3d 535, 538 (7th Cir. 1995) ("This Court ordinarily may modify a dismissal for lack of jurisdiction and convert it to a dismissal on the merits if warranted."); *Peckmann v. Thompson*, 966 F.2d 295, 297 (7th Cir. 1992) ("If a defendant's Rule 12(b)(1) motion is an indirect attack on the merits of the plaintiff's claim, the court may treat the motion as if it were a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted."); *see also, e.g.*, *Daley v. Provena Hosps.*, 88 F. Supp. 2d 881, 885 (N.D. Ill. 2000) ("Because the defendants in this case are questioning the applicability of the FDCPA, the court will review defendants' motions to dismiss pursuant to Rule 12(b)(6).").

## II. Standard of Review

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy*, 51 F.3d at 717. To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true, . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. A claim has facial plausibility when the pleaded factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See id*. at 1949.

## III. Federal Debt Practices Act

Congress enacted the FDCPA to protect debtors from "abusive debt collection practices by debt collectors . . . ." 15 U.S.C. 1692(e). The Act "regulates interactions between consumer debtors and 'debt collector[s].'" *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, — S. Ct. —, No. 08-1200, 2010 WL 1558977, at *3 (Apr. 21, 2010). The FDCPA distinguishes between "debt collectors" who are covered by the FDCPA and "creditors" who generally are not. The term "debt collector" is defined in § 1692a(6) as "any person . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." A "creditor," on the other hand, is broadly

5

defined as one who "offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(5).

If Gaddy cannot show that Wulf is a "debt collector," her claim under the FDCPA fails. In spite of the fact that Wulf was attempting to collect a personal debt, the rent Wulf owed him from the rental of his property, Gaddy attempts to bring him within the ambit of the FDCPA by claiming that Wulf falls within the "false name" exception. Specifically, she alleges that while in the process of collecting his own debts, he impersonated "a third person" in his letter to Gaddy's employer. The Court analyzes "debt-collection communications from the perspective of unsophisticated recipients." *Catencamp v. Cendant Timeshare Resort Group-Consumer Fin., Inc.*, 471 F.3d 780, 782 (7th Cir. 2006).

A creditor who is collecting or attempting to collect his own debt is excluded from the definition of "debt collector" with one exception: the term "debt collector" includes "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." *See* 15 U.S.C. § 1692a(6). Here, Wulf never used a name other than his own when attempting to collect his debts. Wulf sent Gaddy's employer a letter on Wulf's law firm letterhead (Law Offices of Arthur S. Wulf), which stated, in part, "I believe you have an employee named Lavonia Gaddy. She was formerly a tenant of a client of mine, and was behind in her rent for many months." (Compl., Ex. C.). The letter was signed by Wulf himself. It is likely that the purpose of this letter was to lead Gaddy's employer to believe that Wulf was an attorney collecting a debt for his client when in fact he was collecting the debt on his own behalf. Nevertheless, Wulf never concealed his identity to Gaddy or to her employer and always used his own name in all correspondence. Gaddy knew who Wulf was

and had dealt with him frequently. In fact, on the same day her employer received the letter from Wulf, Gaddy received a letter from Wulf that was also written on Wulf's law firm letterhead. (*See* Compl., Ex. B.)

This is not a situation like the one in *Nielsen v. Dickerson*, 307 F.3d 623, 634 (7th Cir. 2002), for example, where the creditor used *another attorney's* name and letterhead to give his debtors the impression that an attorney had become involved in the effort to collect the creditor's debts. Nor is it like the situation in *Catencamp*, in which the letter sent to the debtor was on what a reasonable recipient would believe was the letterhead of a third party and the letter "proclaim[ed]" that it was "coming from someone other than the creditor." 471 F.3d at 781-82 (emphasis omitted). Indeed, the court in *Catencamp* found that even if a reasonable recipient was confused about who had sent the letter, as may have been the case here for Gaddy's employer, "the Act's anti-confusion rule applies only to debt collectors." *See id*. at 782 (pointing out that it would be even less likely that the "false name" exception applies if the communication was on the letterhead of the true creditor, but falsely identified someone else as the creditor). The "false name" exception does not apply here.

Next, Gaddy argues that because Wulf is a landlord seeking to collect unpaid past due rent, he is a "debt collector" under the FDCPA. Gaddy cites to an Illinois Appellate Court case for this proposition. (*See* R. 16, Resp. at 2-3 citing *American Mgmt. Consultant, LLC v. D. Carter*, 915 N.E. 2d 411 (Ill. App. Ct. 2009)). An interpretation of a federal statute by an Illinois Appellate Court is not binding on this Court. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 n.1 (7th Cir. 1997) (quoting *Grantham v. Avondale Indus., Inc.*, 964 F.2d 471, 473 (5th Cir. 1992)) ("'[W]e are not bound by a state court's interpretation of federal law regardless of whether our jurisdiction is based on diversity of citizenship or a federal question.'").

7

Further, despite the *American Management Consultant, LLC* court's broad discussion of the FDCPA issue—which was not necessary for resolution of the appeal[1]—the court focused its analysis on the issue of whether an Illinois forcible entry and detainer action qualifies as an attempt to collect debts under the FDCPA and never reached the issue of whether a landlord collecting past due rent on his own behalf is a "debt collector" under the FDCPA. *See id*. (addressing the FDCPA issue because it was "vital to resolve any questions surrounding plaintiff's efforts to collect 'debts' from defendant and others like her, and also because resolution of the question is of significant importance to future litigants in forcible entry and detainer proceedings"). Thus, despite the court's conclusion, Gaddy cannot point to any analysis in the decision that persuades this Court that a landlord attempting to collect his own debts is a "debt collector" under the FDCPA. *See, e.g.*, *Clabault v. Shodeen Mgmt.*, 406 F. Supp. 2d 877, 880 n.1 (N.D. Ill. 2005) (the defendant, "a lessor collecting a debt of its own and not using an assumed name in its collection efforts . . . could not be held as a 'debt collector' in violation of the FDCPA"); *Kegley v. Miles Mgmt. Corp.*, No. 92 C 3438, 1992 WL 370251, at *2 (N.D. Ill. Dec. 3, 1992) (Andersen, J.) (a lessor seeking to collect debts and unpaid rents on its own behalf is not a "debt collector" as defined in the FDCPA).

Thus, because Wulf does not fall within the "false name" exception, he cannot be sued as a "debt collector" under the FDCPA. The Court therefore grants Wulf's Motion to Dismiss Count I with prejudice.

---

[1] As Wulf correctly points out in his Reply, the court's discussion of the FDCPA in *American Management Consultant, LLC* is dicta. The court noted twice that its analysis of the FDCPA issue was not necessary for the resolution of the case. *See id*. at 421 ("[W]e are not required to reach defendant's FDCPA argument to resolve her appeal[.]"); *id*. at 423-24 ("Although we hold that plaintiff is not entitled to relief under the forcible entry and detainer statue and, therefore, it is not necessary to our resolution of the instant appeal, we find that plaintiff failed to comply with the FDCPA.").

### IV. Motion for Attorney's Fees

Wulf also moves for attorney's fees and costs. Section 1692k(a)(3) of the FDCPA allows for fees only if the defendant can prove that Gaddy brought the case in bad faith. Specifically, § 1692k(a)(3) states that "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." Because there is no evidence that Gaddy and her attorney brought this suit against Wulf in bad faith and for the purpose of harassing him, the Court denies Wulf's motion for costs and fees. *See, e.g.*, *Villarreal v. Snow*, No. 95 C 2484, 1997 WL 116801, at *3 (N.D. Ill. Mar. 12, 1997) (stating that "bad faith or harassment is not reflected where a plaintiff loses his case on the basis of the interpretation of statutory language").[2]

### V. State Law Claims

Gaddy's remaining claims are state law causes of action over which the Court has supplemental jurisdiction. However, because it has dismissed Count I, Gaddy's only federal cause of action, the Court declines to exercise jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367 ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original juridiction"); *Wright v. Associated Ins. Companies, Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) (stating the "general rule" that "when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits").

---

[2] Wulf attached a number of documents to his Motion to Dismiss that are outside the pleadings and are not relevant to the Court's decision in this case. The Court has not relied on those documents.

## CONCLUSION AND ORDER

For the reasons stated, the Court grants Wulf's Motion to Dismiss Count I with prejudice for failure to state a claim, denies Wulf's Motion for Attorney's Fees and Costs, and relinquishes jurisdiction over Counts II, III, IV, and V.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: May 11, 2010